Today's cases will be called as previously announced and the times will be as allotted to counsel. Judge Lopez, can you hear us? Judge Lopez, can you hear us? Yes, I can hear you. Can you hear me? Yes, Judge. Thank you. Good. Thank you. Judge, I'll put it on the record. The first case today is number 22-1523, Edson Perez Rosa v. Merrick v. Garland. At this time, would counsel and petitioner come to the podium and introduce themselves on the record to begin? Thank you and good morning. My name is Tara Jekanovic. I'm a student with the Harvard Commigration Clinic under the supervision of Tiffany Liu. And I'm here today representing the petitioner, Mr. Edson Perez Rosa. I would like to reserve two minutes for rebuttal, if I may. You may have two minutes. Thank you. May it please the court. At core in this issue, the board denied relief based solely on an uncorroborated police report. One that Mr. Rosa has never had his day in court on because ICE has refused to allow him to attend its public proceedings. Today, I will be focusing on two ways the board has legally erred. First, under this court's precedent in Arias Mania, before the board considers a police report, the board must first determine that the report is reliable and that its use would not be fundamentally unfair. However, the board failed to reach either threshold determination here. And second, the board violated its own precedent in Matter of Thomas and Arreguen de Rodriguez, which prohibits denial of discretionary relief based solely on an uncorroborated police report and charge. While the charge at issue is serious, the facts are not at issue. And rather, what is before the court is the board's violation of this court and its own precedent. These legal errors warrant remand. And I'll address each issue in turn. First, counsel, can I ask you about the reliability argument that you're making? It seems to me that the immigration judge did address the reliability of the police report. And I understand you're arguing that the board didn't sufficiently adopt that. But can you elaborate on that? Because when I read the board's decision, it says it finds no error in the IJ's rulings. It does talk about reliability, although perhaps in the hearsay frame. But why is that not enough, given the IJ's explicit reliability finding here? Yes, Your Honor, a few points there. First, to the board's adoption of the IJ's opinion, we do not believe that the board properly adopted the IJ's opinion under this court's precedent in Aguilar-Escoto v. Garland. And there, the court said, when the BIA does not say that it's adopting the IJ decision, and only that the IJ's findings were not clearly erroneous, this court reviews the BIA's decision alone. However, the immigration judge in this case, insofar as this court may review the immigration judge's decision, that was not a reliability finding either. And the reason why is first that the IJ there only makes a reliability finding about the victim's complaint and not the police report as a whole. But she also completely allied to make a fundamental fairness determination. And under this court's precedent in Arias-Manaya and its progeny, both the IJ and the BIA are required to do both reliability and fundamental fairness determinations. But returning to the BIA's decision, nowhere in the BIA's decision does the board make a reliability finding, and the board completely fails to mention fundamental fairness entirely. This is a clear error requiring remand. And this court has held that not only in Arias-Manaya v. Holder, but it has held that in four subsequent decisions in Adeyanju v. Collins. So the BIA decision says, upon de novo review, we agree with the IJ that the significant negative factor of the respondent's criminal indictment for rape of a child, which remains pending, including the information found in the victim's complaint regarding the alleged incident, outweighs the favorable factors she set forth, then cites to the decision. I understand you're saying that's not enough. Does the BIA have to make specific findings on the two issues? Yes, Your Honor, that's correct. As this court said in Arias-Manaya, immigration adjudicators like the BIA can certainly consider police reports in their determination. But why wasn't that specific enough, I guess, the sentences I just read to you? Your Honor, the reason why it doesn't meet the Arias-Manaya test is because the BIA does not affirmatively look to the reliability and fundamental fairness of the police report as a whole. And in prior cases where this court had determined that the BIA properly did reliability and fundamental fairness finding, is when the BIA either mentioned those words or grappled with things that go to reliability and fundamental fairness. But here, there's no indicia that the BIA reached either determination under the principles of Chenery. This court has no basis to judge the propriety of the agency's decision. However, the board has also separately erred in another way. Second, the board separately erred when it violated its own precedent in the matter of Thomas and Araguen, which prohibits denying relief based on uncorroborated arrest reports. Counsel, can I ask you a question about that? Did your client ever contest that he had been indicted? No, Your Honor. But the indictment has since been dismissed, as we described in our 28 changes. But at the time of the hearing, the merits hearing, he didn't contest that he had been indicted. And I'm wondering why that alone isn't enough here. I understand your arguments about the police report itself, but in a situation where the petitioner isn't contesting the indictment, why isn't that enough? Your Honor, contesting the indictment or not contesting the indictment does not rise to the level of corroboration of a police report. And it's notable here that Mr. Rosa has consistently denied the allegations against him both in the police report and through his immigration counsel in the lower court. I think the Sixth Circuit's precedent Well, let me just ask it a little bit differently. The argument that you were about to go to, I think, was how the board erred because it misunderstood the material evidence by referring to an indictment and a criminal complaint when all there was was a police report. So I guess my question to you is, is it an error for the board to refer to an indictment when the petitioner himself has not contested that he has been indicted on those charges? Why is that an error, a legal error by the board? Your Honor, to clarify, the legal error is not for the immigration judge or the BIA to refer to the indictment, but it's a legal error when the immigration judge and BIA rely on the allegations considered in an uncorroborated police report and indictment to deny Mr. Rosa relief. And this is something that three other circuits have since agreed with. The Fourth Circuit and Rogel v. Garland, the Sixth Circuit and Vilecchi-Tolosa v. Ashcroft, and the Seventh Circuit and Vila-Ramirez have all agreed that when the board solely relies upon an uncorroborated police report and charge and indictment to deny relief that is error. I understand that argument, but I was seeing that as a separate argument. You had a series of arguments. So one of your arguments, I think, is that the board, putting aside whether it was wrong to rely solely on a police report, the board also erred because it refers to an indictment and a criminal complaint that are not in the administrative record. And so my question is to, just on that particular argument, given that your been indicted and there was a criminal complaint filed on those charges, why is that error? Why is that separate argument correct? I apologize, that's our mischaracterization. It's error because the indictment is not included in the record. And when the IJ referred to the lack of any testimony and then cited to an indictment, but instead cited to the police report, she was mischaracterizing the evidence that she was relying upon to ultimately deny these charges. Do you have any case law suggesting that the filing of the actual indictment would be necessary for the BIA's reliance here? Your Honor, excuse me, is that towards the matter of Thomas point or the mischaracterization? Is it to Judge Rickman's point? Judge Rickman's point, yeah. We contend that principles of administrative review determine that the IJ can only cite to materials in the record to deny Mr. Rosa relief. And so when the IJ was reviewing all the evidence before her, and the BIA as well, and their determination, they were only looking to what we know now to be the police report. Can we turn briefly to your Arrogan argument? Yes, of course. So, I guess I'm wondering why you think Arrogan applies here to the sole reliance on the police report? Because I see some differences between the fact of Arrogan and the facts we have here. Your Honor, we believe that other circuits precedent is especially informative here. For example, in Bilecki-Tolosa versus Ashcroft in the Sixth Circuit, the petitioner there was arrested on two charges of sexual misconduct with a minor, but the IJ denied him relief. But then he ultimately plead guilty to two lesser charges that did not enrich sexual deviancy. The IJ denied him relief based on the sexual deviancy charges that have not been corroborated. And the Sixth Circuit found that to be error because when the driving force of an allegation or, excuse me, the driving force of a denial is an uncorroborated allegation, that is error. And that's exactly what happened in Uruguay. I guess one difference I see is that the prosecution had been declined in Arrogan, and the BIA there explicitly referenced that fact in giving substantial weight to the arrest report in saying that, sorry, giving substantial weight to the arrest report in that case was improper. Whereas here, your client faces indictment for the conduct described in the police report. Can you address that difference? Yes, Your Honor. What Arrogan stands for in the most relevant sentence in Arrogan is that they are hesitant to give substantial weight to an arrest report absent a conviction or corroborating evidence of the allegations contained therein. And as the BIA and other circuits have developed that standard, they find corroborating evidence to not, an indictment to not meet the standard of corroborating evidence. Corroborating evidence or indication of corroborating evidence that the BIA and the courts have previously considered are things like guilt or excuse me, a conviction or admission of guilt or physical corroborating evidence, none of which we have in this case here. And so, like in Rogel v. Garland in the Fourth Circuit, even when an indictment is pending or there is a charge pending, it continues, excuse me, that is still not corroborating evidence and it's still not permissible evidence that the board may rely on to deny relief. So, I'm sorry, I know your time is over, but I have one, I'll try to make this quick. Arrogan was a 212C waiver case, right? That's correct, Your Honor. And Rosa here seeks adjustment of status. And we have a case, the First Circuit, in Henry that distinguishes Arrogan because it's a waiver case in a footnote. I can see arguments that that isn't a holding and is dicta, but why should we find Arrogan binding as you urge us to do with what we know our court has said in Henry? Or in this context, would you say it doesn't really matter that they're different types of cases, the principles are the same? Your Honor, I think that's exactly right, which is the principles are the same here. And our sister circuits have agreed that, and looking to the language in Arrogan, the reason why this precedent exists is because it is not the job of an immigration judge to go behind a conviction or especially an uncorroborated allegation to determine the guilt or innocence of a non-citizen. That's exactly what's at issue here today. Judge LaPoste, do you have any questions? Yes, I do. Thank you. Counsel, the it's very clear from reading the IJ's decision that the IJ has looked carefully at what's described as Exhibit 2, which is inherited with the victim's complaint. It also includes an account of how the defendant responds to the victim's complaint. It's a very detailed account of what the victim says happened to her. There's also a detailed account of the response, and it seems to me that the IJ looks at all of that detail and makes a judgment that the victim's detail provides some reliability to what she is saying and the response of the defendant is implausible. There's a kind of internal reliability judgment that I think is made by the IJ when she reads all of this detail. It's not external. It's not corroboration that is external to the report, but she makes a kind of internal reliability judgment. Why wasn't the IJ entitled to do exactly that? And, just to add to that, when given an opportunity of the hearing, your client understandably chooses not to respond to all of that detail. So the IJ is left with a record where this report has been examined. It appears, because of all the detail, to have elements of reliability. Your client doesn't respond to that. Why doesn't that, in effect, provide a legitimate exception to any requirement that there has to be some corroboration external to the report itself? Could you respond to that, please? Of course, Your Honor. Three points there.  One, that under Arias-Mania, both the BIA and the IJ are required to make separate reliability determinations, whereas here, the BIA does not expressly adopt the decision. But second, insofar as the IJ may have made a reliability finding, she still erred because she did not make a fundamental fairness finding. And under Arias-Mania, the IJ was required and the BIA was required to do both a fundamental fairness and reliability finding. There is no mention of fundamental fairness anywhere in the decision. And finally... Excuse me, counsel. Where is the lack of fundamental fairness in this procedure? Your Honor, to be clear, we're not contesting that, in front of the Court today, that the report is reliable or fundamentally unfair, or excuse me, unreliable or fundamentally unfair. Rather, we're challenging whether the BIA made the proper threshold determination that this Court has said they must under Arias-Mania v. Holder and its progeny. And we find, and it's clear that by not mentioning fundamental fairness at all, either in the IJ or BIA decision, the Board has clearly erred, as well as the IJ. But finally, to your Honor's point about Mr. Rosa's refusal to testify because of his ongoing criminal proceedings, that does not provide an exception to the BIA's precedent in denying an uncorroborated allegation contained in a police report to deny relief. Not testifying in immigration proceedings does not rise to the level of corroboration that the BIA or other circuits have referred to in finding an allegation to be corroborated. And so all we have here today are allegations contained in a police report that have been solely relied on to deny relief. And in line with the Board's precedent in Raigwin and three other jurisdictions, that is not a legal error. Thank you. Thank you, Your Honors. Thank you, Counsel. At this time, would Counsel for the Respondent please introduce himself on the record to begin? May it please the Court, Your Honors. Tim Remitz on behalf of the United States Attorney General. In this immigration case, the agency properly relied upon the police report to deny discretionary relief. There are two things required before the agency can rely upon a police report to find it reliable and provide the Petitioner an opportunity to respond. The Petitioner concedes he does not contest the reliability of the police report. And he had an opportunity to respond. He doesn't challenge that part either. He says he was allowed to respond, but he chose not to. So both parts of the course precedent test are met in this case. If they're not challenging reliability, not challenging the opportunity to respond, then what more is there to consider in this case? But, be that as it may, the Petitioner has made some challenges that seem to cut back on the concession that are not challenging the reliability of the police report. For example, well, what they really seem to be arguing is that they want some magic words in the Board's opinion. They want this phrase, fundamental fairness, mentioned. They want certain reliability phrases put in the Board's decision. But again, if they're not challenging the reliability of the police report, what's the use of that? They're not saying it's unreliable, and that's been the narrative throughout Petitioner's proceedings. Before the immigration judge, they didn't challenge reliability of the police report based on internal inconsistencies, for example. The only challenge they made was that it was based on a case that came out the day before the IJA's decision, Diaz-Ortiz. That was based on the unreliability of a gang database. That was the only challenge they've ever made to the reliability of the police report. The immigration judge addressed Diaz-Ortiz. The Board addressed Diaz-Ortiz. So even there, when the Board, when Petitioner says these decisions did not address his reliability challenge, it's clear in the face of the decisions they did. Let me ask you a question. If the IJA failed to make a reliability finding, there'd be an exhaustion problem. But let's assume for a second that the IJA did make a reliability finding, or assume that we agree that he did. How do you suggest the analysis goes if we find the IJA properly made a reliability finding? So is Rosa correct that there wouldn't be an exhaustion issue? And relatedly, does the IJA then have an independent duty on de novo review to make both the reliability and the fundamental fairness findings even if Rosa doesn't challenge those? So we're talking about the IJA and the BIA? Yes. I'm sorry. I think I misspoke. I think I understand though. So the BIA is looking at de novo. So they could make a reliability finding if the IJA didn't. But here both decisions clearly reflect that they both consider reliability. And the Board also states we are affirming the IJA and cites to pages 6-7 of the IJA's decision which address reliability. And I think what we're facing here is that there's a jurisdictional bar to discretionary decisions and the only exceptions are to alleged question of law or constitutional claim. Just to circle back, so your position is that the IJA did make sufficient findings as to the fundamental fairness on the police report? Correct. The immigration judge addressed reliability and then the fundamental fairness is the opportunity to respond. And the petitioner was afforded that opportunity but he declined. I think Arias is really the most helpful case here because it's almost note for note what happened in this case. So in Arias, the petitioner was charged with a domestic violence offense and he sought discretionary relief and the charge was pending before the immigration judge just as it was here. And when he was given an opportunity to respond or submit a declaration, he declined. The immigration judge said in that case, you've given me no reason to question reliability of the police report and you've not responded with your side of the story so I'm relying on the police report to deny discretionary relief. And this court said that was all in keeping with the court's precedent. It's okay to rely on a pending charge as long as you've made that reliability finding and provided an opportunity to respond. That's what's required. You're not challenging a liability, you're not challenging to provide the opportunity to respond. It's really, so going back to the jurisdictional bar, we see this very often that you have to manufacture a legal claim to get around that bar. I think that's what we're seeing here is just something to invoke the court's jurisdiction. But what happened between the IJA and the BIA was completely in accord with the court's precedent, in particular Arias, which the board cites. The board cites Arias because this case is no different. Counsel, what about the fact that the BIA decision does refer to an indictment and a criminal complaint discussing them as if they were in the record when they're not? Should we be concerned that the board misunderstood the underlying facts here? I don't think that the board and the immigration judge are under no misapprehension that they lack the criminal indictment in the record. But it was in dispute at the time the petitioner had been criminally indicted for forced rape of a child. He never disputed that. And of course, we all know he did. He submitted a 28-J letter showing those stages of proceedings. But he declined to submit any of these records to the IJA. And that was his burden. When you're seeking discretionary evidence, he warrants that relief. He should have submitted these things, but he declined not to. But he, for good reason, probably showed facts similar to what are in the police report. But he never disputed that he was criminally indicted for forced rape of a child. And there's really, there's no confusion here. Immigration judge states at page 7 of the decision, Exhibit 2 is the police report containing the allegations of the witness. Then there's the criminal indictment for forced rape of a child. There's no confusion between the two. I know the IJA is not confused, but I guess I'm talking much more about the BIA itself, counsel, and I'm just looking at page 2 of the BIA's opinion where it says, Upon de novo review, we agree with the immigration judge that the significant negative factor of the respondent's criminal indictment including the information found in the victim's complaint. So I'm not sure I agree with you that it's clear just from the four corners of the BIA opinion that the BIA understood the indictment and the criminal complaint weren't in the record. That's what I was hoping you could address. I understand. I believe the board was under no confusion either. The criminal indictment was undisputed. There's no question that they know he was indicted for forced rape of a child. And then the victim's complaint is exactly the phrase used by the immigration judge to refer to the police report. So I think what you're seeing is the board looking at pages 6 and 7, which it says, and basically echoing the language of the You're just saying they're using the immigration judge's phrase. That's all that means there. Yes, because they're affirming the immigration judge that they find nothing wrong. They said, quote, no reason to disturb this discretionary finding. I just want to address the matter of Aragon briefly. The panel had questions about the matter of Aragon. Again, this case goes back to Arias. Arias made the exact same argument that the agency did not follow the matter of Aragon because it relied on an uncorroborated police report. Arias said Aragon did not apply because all he needed was that reliability finding and the opportunity to respond, and it's okay to rely on a pending charge as long as the immigration judge makes those findings, and they did. He said the matter of Aragon was based on idiosyncratic facts that are not black letter law that the immigration judge could not rely on a police report. And they cited back to Henry v. INS, which was a decision that came out a year after the matter of Aragon, decades before. So it's been this court's precedent for decades that the matter of Aragon does not prevent them from relying on a police report to deny discretionary relief as long as those two factors are met, reliability and opportunity to respond. Any further questions? Yes, I have a question about Mello, which you rely on and I think is the strongest, one of the strongest cases we have on the civil reliance issue. But one way to read Mello is that the petitioner there didn't present the question as a legal question as it's presented here, but as Excuse me, can you spell Mello, please, so I know which one we're talking about. I'm sorry, I'm saying Mello, if that's not right. M-E-L-L-E. My apologies. M-E-L-L-E. And there the petitioner, it seemed to me, you could read that case as saying they were challenging the weight of the evidence in the discretionary determination rather than, which wouldn't be a legal question, rather than the legal question of the sole reliance on the police report. Could you speak to that? I think that's ultimately what the petitioner is trying to do here. And that's what Mello is talking about, is that when they're trying to manufacture a legal claim to get around a jurisdictional bar, really what it is is challenging the weight the agency put on this police report. So they're saying it's really not a legal question, this is you're challenging the weight, and you're just trying to phrase it as a legal question. Unless the panel has any further questions. Judge Laifez, any questions? Yes, thank you. The petitioners represent, and I think this is all confirmed by the record, that the government for a period of four years made the defendant really unavailable to respond to the criminal charges. And of course we've just been advised in a 28-J letter that was dated March 14th that the criminal charges that we've been talking about have now been dismissed. In part because so much time has passed and the defendant has not been able to respond to these charges in criminal court. In fact, there's a suggestion that the government disregarded orders that the defendant appear in court. Could you respond? That's a somewhat troubling account. How do you explain what happened in that regard? When I read that memorandum, I didn't see anything in that decision saying that they were prevented from appearing at hearings by ICE, Immigration and Customs Enforcement. But they dismissed the charge yes, because ICE removed Mr. Rosa. But what really we're facing is just two different sovereigns, two different priorities. ICE is not permitted to withhold the removal of someone because a state asked them to. There's nothing in the statutes that allows them to do that. Their priority and their function is just to prosecute or enforce immigration. And so when the state is doing something of its own sovereign authority, the federal government has its own sovereign priorities as well. There was no bad faith in petitioner's removal, no evidence of bad faith, that they did it to obfuscate his trial. They just removed him because the court denied the stay, we gave a notice of intent to remove him, and it was all done within the law. So how long was he in this country before he was actually bent over while these charges were pending before he was removed to Cape Verde? Do you know? I'm not sure off the top of my head how long he was in criminal proceedings before he was removed. But I think part of it had to do, he was put into removal proceedings because he overstayed his visa, but the arrest brought him to the attention of authorities, and they put fugitive operations out to apprehend him. And so the criminal proceedings were commensurate with removal proceedings throughout. And then what kept him in detention was that he filed stay, he filed his PFR, and then the court denied his stay, and then he was removed. But what about the allegations that ICE didn't respond to actual orders that they produced him for criminal proceedings? I've seen no evidence to corroborate that. I contacted ICE, they said they've always produced him for proceedings. They said they declined, they said they didn't also have any record of communication from the state of Massachusetts asking them to withhold removal for the proceedings, but they also said even if they did receive a communication like that, they have no authority to withhold based on what a state asked them to do. But putting aside the removal, just while he was in custody here in the United States, your opposing counsel has said that ICE refused to produce him while he was still in custody, not under a removal order for criminal proceedings, so he couldn't contest the charges against him. How do you respond? I respond by saying statements of counsel are not evidence. We don't have any evidence in the record that that happened. And ICE doesn't have any record of that happening. ICE has no record of failing to produce him for proceedings while he was not under a removal order. Correct. I'm not losing attention. If I might just very quickly, in this 28-J letter, and perhaps opposing counsel can respond to this, we're advised that Mr. Rosa plans to file a motion to reopen proceedings with the court in light of the dismissal of these criminal charges. Does that have any effect on what we should be doing with the case before us? It's not an effective position of this case. The court's reviewing the agency's decisions that are before it, and as we've gone over, they did their decisions in accordance with this court's law. It also wouldn't affect adjudication of a potential motion to reopen. A motion to reopen is going to have to overcome a 90-day timeline of filing, and also prove, as they want in this case, administrative closure. And those are things that are not going to be affected, proving these things, by disposition of this case. This case is about arias, essentially. Reliability, opportunity to respond. Disposition of those issues are not going to affect what they need to bring forward in the motion to reopen. Otherwise, as we say, when there's dismissed charges, when it's not an acquittal, it has no calculus in the discretionary analysis. Thank you. Thank you, counsel. At this time, the counsel for the petitioner will please reintroduce herself on the record. She has a two-minute rebuttal. Thank you, Tara Jukanovic, for the petitioner. A few quick points on rebuttal today. First, we want to correct the record here. There are concerns with the reliability and the fundamental fairness of the reported issue. But the issue before the Court is whether the Board made those threshold determinations, as this Court requires in Arias-Mania, when it said there are of course limits to considering a police report and discretionary determinations. The Board must make separate reliability and fundamental fairness determinations on de novo review, where it did here, and it did not expressly adopt the IJ's decision. And the Board failed to do that on both fronts. While the opposing counsel makes an argument that there was a reliability finding, this was an entirely separate context, declining to extend Diaz-Ortiz's holding that some police reports are presumptively unreliable, like the ones in Diaz-Ortiz. But it was not making an affirmative reliability finding. And finally, opposing counsel is mistaken that fundamental fairness is equivalent to an opportunity to rebut. The Court has never said that those two things are identical. Instead, they've said that there needs to be an affirmative fundamental fairness finding. And where the Board, as is here, does not make that clear, there is nothing for this Court to review under principles of Chenery to judge the propriety of the agency's decision. Moving on to, excuse me, we also want to address Judge Montecalvo's point about melee. The facts of melee are distinct. There, the petitioner contested that too much weight had been given to the negative factors, and not enough weight had been given to his positive factors. It was not a precedential argument there, and that's why that was not legal error. But the point that we're bringing before the Court today is that this is a precedential argument, and as Judge Lipez noted, and as the record in 316 notes, when the petitioner, as is here, was prevented from going to his criminal proceedings and his counsel sought writ of habeas to be produced, and he was never produced, that is a problem, and you cannot solely rely on corroborated police reports to deny relief. Thank you, Judge Lipez. Nothing, thank you. Thank you, Your Honors. Thank you, counsel. That concludes argument in this case.